**RELIANCE MUTUAL OF AMERICA, INC., an Oklahoma Mutual Insurance Corporation, Plaintiff in Error,**

v.

**The STATE of Oklahoma ex rel. Joe B. HUNT, Insurance Commissioner, Defendant in Error.**

No. 43578.

Supreme Court of Oklahoma.

Feb. 8, 1972.

Rehearing Denied Aug. 1, 1972.

J. M. Sheehan, McClelland, Collins, Sheehan, Bailey & Bailey, Oklahoma City, for plaintiff in error.

James T. Farha, Everett E. Sloop, Oklahoma City, for defendant in error.

LAVENDER, Justice:

This appeal, by Reliance Mutual of America, Inc., involves a declaratory judgment rendered, on May 5, 1969, in a cause in which it was the plaintiff and the defendant in error, the State of Oklahoma ex

rel. Joe B. Hunt, Insurance Commissioner, was named as the defendant.

The plaintiff is a domestic mutual insurance corporation. It was incorporated under the provisions of 36 O.S.1951, §§ 371 through 391, and received its first certificate of authority to transact any kind of insurance in Oklahoma, and a renewal thereof, prior to July 1, 1957, which was the effective date of the 1957 Oklahoma Insurance Code. On that date, it held a valid certificate of authority to transact accident and health insurance, expiring on the last day of February, 1958. The pre-code insurance statutes did not require any domestic insurance company to deposit any of its assets with any state officer, board or commission.

As of November 10, 1960, it had been issued renewal certificates of authority, pursuant to the provisions of the code without having to comply with any "deposit" provisions of the code, for the license-years ending on the last days of February, 1959, 1960, and 1961, authorizing it to transact accident and health insurance. "Accident and health insurance" is one of the kinds of insurance authorized under Section 609 of the code (36 O.S.1961, § 609).

On November 10, 1960, the plaintiff was issued a certificate of authority, for the license-year ending on the last day of February, 1961, authorizing it to transact an additional kind of insurance authorized by Section 609 of the code, which would come within the code definition of "vehicle insurance." At the time of the trial, it had been issued renewal certificates, covering both kinds of insurance, for the license-years ending on the last days of February, 1962 through 1969.

At least since November 10, 1960, a dispute had existed as to whether or not any provisions of the code requiring a minimum amount of surplus funds, or requiring a minimum "deposit" of surplus funds with the State Treasurer, were applicable to the plaintiff. However, because it was thought that, under one of the sections of the code, as amended in 1961, the plaintiff

would have until December 31, 1969, within which to meet any such "surplus" and/or "deposit" requirements, the certificates covering both kinds of insurance had been issued without regard to the requirements which the Insurance Commissioner contended were applicable to the plaintiff.

The plaintiff contended, and contends, that, because of apparent omissions, lack of specificity, ambiguities and conflicts in various provisions of the 1957 insurance code, none of the minimum "surplus" or "deposit" requirements of the code were applicable to a domestic mutual insurer which, as in its case, had been incorporated prior to the effective date of the code and was lawfully authorized to transact insurance in Oklahoma when the code became effective.

The Insurance Commissioner contended, and contends (under one of two theories advanced), that the provisions of Section 2112 of the code (appearing as 36 O.S. 1961, § 2112) were, and are, applicable to the plaintiff with respect to certificates of authority issued on and after November 10, 1960. That statute provides:

"A domestic mutual insurer after being authorized to transact one kind of insurance shall be authorized by the Insurance Commissioner to transact such additional kinds of insurance as are authorized under section 609 of article 6 and [sic] upon otherwise qualifying therefor and depositing and thereafter maintaining on deposit with the State Treasurer through the Insurance Commissioner unimpaired surplus funds in amount not less than the amount of capital required of a domestic stock insurer transacting like kinds of insurance, and subject further to the additional surplus requirements of section 611 or article 6 if applicable (expendable additional surplus in amount of one-half or required surplus if it qualifies to transact more than one kind of insurance within first five years)."

In its journal entry of judgment, the trial court held that the provisions of Sec-

tion 2112 were applicable to the plaintiff, and gave the plaintiff until December 31, 1969, to comply therewith.

The trial court did not pass upon the matter of minimum "surplus" requirements or the matter of whether or not the "additional surplus" requirements of Section 611 of the code, mentioned in Section 2112, were applicable to the plaintiff. The matter of "surplus" requirements, as distinguished from "deposit" of surplus requirements, is not involved herein.

The trial court did not render judgment concerning the amount of "deposit" of surplus required of the plaintiff under Section 2112. That matter is not involved herein. However, because the plaintiff contends that subsection A of Section 610 of the code (36 O.S.1961, § 610) could have no application to it, we note that, if Section 2112 is applicable to the plaintiff, as held by the trial court, the amount of "capital" required of a domestic stock insurer transacting the same kinds of insurance is provided for in subsection A of Section 610 and in Section 612 of the code (36 O.S. 1961, § 612).

Under the record on appeal herein, the only issue presented to this court is whether or not the "deposit" requirements of Section 2112, supra, or any other "deposit" provisions of the code, are applicable to the plaintiff with respect to certificates of authority issued subsequent to December 31, 1969.

Except for the fact that, of necessity, an insurer would have to possess sufficient surplus funds to make, and maintain, any required "deposit," the matter of "surplus" requirements of the code are not involved herein.

We note here that, in its brief in this court, the plaintiff does not even mention Section 2112, supra, although, under the plaintiff's basic premise, that, ever since the effective date of the code—because of the provisions of Section 707 of the code, hereinafter mentioned—it has been authorized to transact only one kind of insurance, to wit, "casualty insurance," the provisions of Section 2112 would not be applicable to it.

The 1957 Oklahoma Insurance Code, which, as mentioned above, became effective on July 1, 1957, repealed substantially all, if not all, of the then-existing insurance statutes, and did repeal those that had been applicable to the plaintiff.

The code, as amended in 1961, appears as Chapter 1 of Title 36 of the Oklahoma Statutes 1961, using the corresponding article numbers and section numbers. Unless otherwise indicated, article numbers and section numbers mentioned hereinafter, will refer to those article numbers and section numbers of the code and of Title 36 of the Oklahoma Statutes 1961.

Section 609, which is mentioned in Section 2112, provides that (with certain exceptions not involved in this case) an insurer which otherwise qualifies therefor may be authorized to transact any one "kind" or "combination of kinds" of insurance as defined in Article 7. That article defines the following kinds of insurance: Life insurance" (Section 702), "Accident and health insurance" (Section 703), "Property insurance" (Section 704), "Marine insurance" (Section 705), "Vehicle insurance" (Section 706), "Casualty insurance" (Section 707), "Surety insurance" (Section 708), and "Title insurance" (Section 709).

Section 701 recites that it is intended that certain "coverages" may come within the definitions of two or more "kinds" of insurance as set forth in Article 7, and the fact that such a "coverage" is included within one definition shall not exclude such "coverage" as to any other "kind" of insurance within the definition of which such "coverage" is likewise reasonably includable.

Section 703 states that " 'Accident and health insurance' is insurance against bodily injury, disablement, or death by accident or accidental means, or the expense thereof, or against disablement or expense resulting from sickness, and every insurance appertaining thereto."

Section 706 states that " 'Vehicle insurance' is insurance against loss of or damage to any land vehicle or aircraft or any draft or riding animal or to property while contained therein or thereon or being loaded or unloaded therein or therefrom, from any hazard or cause, and against any loss, liability or expense resulting from or incident to ownership, maintenance or use of any such vehicle, aircraft or animal; . . . ."

Section 707 provides that " 'Casualty insurance' includes vehicle insurance as defined in section 706 and accident and health insurance as defined in section 703, of this article," and, in addition thereto, includes ten other forms of insurance ordinarily written, plus "Miscellaneous insurance" which covers all other kinds of loss, damage, or liability properly a subject of insurance.

In January of 1957, the plaintiff was incorporated as a mutual insurance company for the purpose of transacting the kind of insurance described in Article II of its articles of incorporation, as well as in the statute then appearing as 36 O.S.1951, § 377, as follows:

"To issue individual insurance policies against bodily injury, or death by accident or upon the health of person."

That kind of insurance was referred to as "accident and health insurance" in the statutes then appearing as 36 O.S.1951, §§ 801 through 824, and also would come within the definition of "accident and health insurance" set forth in Section 703, supra.

The plaintiff's first certificate of authority to transact "accident and health insurance" was issued to it on January 31, 1957, and, on July 1, 1957, the effective date of the code, it held a valid certificate of authority to transact "accident and health insurance." Therefore, Section 111 had the effect of exempting the plaintiff from having to qualify for, and obtain, a new certificate, issued under the code, to transact "accident and health insurance" through the last day of February, 1958.

Because of an extension of time until December 31, 1962, granted in subsection B of Section 614, it was not necessary for the plaintiff to comply with any "deposit" requirements of the code respecting the transacting of "accident and health insurance" only, in order to qualify for the renewal certificates of authority for the license-years ending on the last days of February, 1959, 1960, and 1961.

Thus, as a practical matter, the plaintiff's situation, as of the 10th day of November, 1960, was the same as though it had been incorporated, and qualified for and received its first certificate of authority, subsequent to the effective date of the code, and thereafter qualified for, and received, renewals thereof through the last day of February, 1961.

On October 19, 1960, amended articles of incorporation of the plaintiff corporation were approved by the Insurance Commissioner and filed in the office of the Secretary of State, as provided for in Section 2108. Therein, Article II of its articles was amended so as to empower the plaintiff to transact insurance, in addition to the kind described as in the original articles, a kind described therein (as well as in the statute that had appeared as 36 O.S. 1951, § 377, mentioned above) as follows:

"4. Against loss, expense and liability resulting from the ownership, maintenance or use of any automobile or other vehicle, provided no policy shall be issued against the hazard of fire alone."

That kind of insurance would come within the definition of "vehicle insurance" set forth in Section 706, supra, but apparently was described in all subsequently-issued certificates of authority as "Automobile Physical Damage"—a limitation which would be authorized by subsection B of Section 616.

As the basis for its conclusion that, under existing statutory provisions, the plaintiff is not required to maintain any minimum "deposit" of surplus with the State Treasurer through the Insurance Commissioner, the plaintiff starts with the assump-

tion that, ever since the effective date of the code, it has been transacting only one kind of insurance ("Casualty insurance"), and contends that Section 2111 has no application to it because that section, by its language, applies only to "newly organized" domestic mutual insurers when applying for an "original" certificate of authority to transact one kind of insurance, and that Section 613 has no application to a domestic mutual insurer because it requires of mutual insurers a "deposit" of surplus assets in an amount not less than the minimum surplus required, pursuant to the code, to be maintained for authority to transact the kind or kinds of insurance to be transacted, and subsection A of Section 610 contains the only provisions, other than Section 2111, concerning "surplus" requirements for any mutual insurers, but, by express provisions thereof (until the 1967 amendment of Section 610), did not provide the minimum "surplus" requirements for domestic mutual insurers.

First of all, we cannot agree with the plaintiff that, ever since the effective date of the code, it has been authorized to transact only one kind of insurance, to wit, "casualty insurance." It has never been empowered, by its articles of incorporation before or after the amendment thereof, to transact "casualty insurance" as such. Under the provisions of subsection A of Section 607, and subsection B of Section 617, a corporate insurer's authority to transact insurance cannot be broader than its insuring powers under its articles of incorporation. It has never been issued a certificate of authority to transact "casualty insurance," either with or without limitation as to the particular type or types of "casualty insurance" to be transacted, as might have been done, at its request, under subsection B of Section 616, if it had been empowered by its articles of incorporation to transact "casualty insurance" as such.

We agree with the plaintiff that, under the express provisions thereof, subsection A of Section 610 had no *direct* application to any domestic mutual insurers, even with

respect to minimum "surplus" requirements, prior to the 1967 amendment of that section. Prior to the effective date of the 1967 amendatory act, subsection A of that section prescribed the minimum amount of paid-in capital stock (if a stock insurer), or of surplus (if a foreign or alien mutual, or reciprocal insurer), to be possessed, and thereafter maintained, by an insurer to qualify for authority to transact only one kind of insurance as listed in the schedule included therein, and subsection B thereof provided that, as to "surplus" required for "initial qualification" to transact only one kind of insurance, and thereafter to be maintained, domestic mutual insurers shall be governed by Article 21. That section, even as amended in 1961 and in 1967, does not prescribe the minimum "deposit" requirements for any type of insurer, although, in most situations, it would affect the amount of "deposit" of surplus assets required of stock insurers, foreign and alien mutual insurers, and reciprocal insurers under Section 613.

The 1967 amendment of Section 610 made subsection A thereof applicable to "mutual insurers" (as well as stock insurers and reciprocal insurers), increased the amount of capital or surplus required to transact any one kind of insurance, and omitted from subsection B thereof the provision concerning domestic mutual insurance. However, under another provision of the 1967 amendatory act (which also amended Section 612), a domestic insurer lawfully authorized to transact insurance in Oklahoma immediately prior to the effective date of the act would not be required to increase its "capital and/or surplus" to meet the increased requirements of the act.

Subsection A of Section 2111, mentioned by the plaintiff, provides, in the first sentence thereof, that "When newly organized" a domestic mutual insurer may be authorized to transact any one kind of insurance other than title insurance, and then provides that "When applying for an original certificate of authority as an insurer,"

a domestic mutual insurer must meet certain minimum requirements with respect to the one kind of insurance it then proposes to transact, set forth in a schedule included therein. It also provides that "The deposit in the amount specified must thereafter be maintained." Logically, upon receiving its original certificate of authority to transact any one kind of insurance, a domestic mutual insurer completely organized under the provisions of the code, ceases to be a "newly organized" domestic mutual insurer, but it is required thereafter to maintain the minimum "deposit" provided therein for the one kind of insurance it is authorized to transact. As a practical matter, its situation, after receiving such original certificate of authority, is the same as though it had been completely organized, and received its original certificate of authority, prior to the effective date of the code.

With respect to the period of time beginning on the 10th day of November, 1960, we agree with the plaintiff that subsection A of Section 2111 had no application to the plaintiff—not because it was not a "newly organized" domestic mutual insurer applying for an original certificate of authority to transact insurance in Oklahoma, but because, from and after that date, it was authorized (as well as empowered by its articles of incorporation as amended in October of 1960) to transact two different kinds of insurance—"accident and health insurance" and "vehicle insurance" limited to "automobile physical damage"—instead of "accident and health insurance" only, as it had been up to that date.

Unlike some of the provisions of some of the sections of the code, the language of Section 2112 does not limit its application to newly-organized insurers or insurers applying for an original or initial certificate of authority to transact insurance in Oklahoma. In the situation described therein, Section 2112 applies to domestic mutual insurers which were organized, and received their original or initial certificate of authority to transact one kind of insur-

ance, prior to the effective date of the code, as well as to domestic mutual insurers which were organized after the effective date of the code and received their original certificates of authority to transact one kind of insurance and thereby ceased to be "newly organized" insurers applying for original or initial certificates of authority to transact one kind of insurance in Oklahoma.

Insofar as "deposit" requirements are concerned, Section 2112 requires any domestic mutual insurer holding authority to transact one kind of insurance in Oklahoma and desiring to qualify for authority to transact an additional kind or kinds of insurance authorized under Section 609 of the code, to deposit, and thereafter maintain on deposit, with the State Treasurer through the Insurance Commissioner, unimpaired surplus funds in amount not less than the amount of capital it would be required under applicable provisions of the code to possess, and maintain, in order to qualify for, and maintain, authority to transact the same kinds of insurance if it were a domestic stock insurer.

The trial court's judgment to the effect that, subject to any extension of time for compliance therewith granted by the code the "deposit" requirements of Section 2112 were and are applicable to the plaintiff with respect to the certificate of authority issued to it on November 10, 1960, and annual renewals thereof, is correct. The longest extension of time granted by any provision of the code, or any amendment thereof, would not have extended beyond December 31, 1969. Consequently, full compliance with the "deposit" requirements of Section 2112 would be required of the plaintiff in order to qualify for renewal certificates of authority for the license-year ending on the last day of February, 1970, and subsequent license years.

Judgment affirmed.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, JACKSON, IRWIN, HODGES and BARNES, JJ., concur.